# WHEELING.

## BRODIE *v.* CLATOR.

### July 31, 1875.

B. and C. entered into a written agreement which stipulated that C. agreed "to furnish the material and do all the work of plastering at B's. house on Quincy street, at full book of plasterer's prices, in payment of which B. agreed to furnish all material and do all of C's. carpenter work at full book of carpenter prices." B. filed a declaration in covenant; C. demurred to the declaration and each count thereof and plead covenants performed. The court overruled the demurrer. B. and C. then entered of record in the cause a written agreement, viz: "It is agreed that under the declaration, plea and accounts filed by the parties, respectively, in this case, either party may give in evidence any claim, demand, payment or set-off mentioned in his bill of particulars, whether arising under the special agreement declared on or otherwise; but if not arising under the said special agreement, then such party is only to be allowed therefor such amounts as he may prove as the amount, price, or value thereof, without reference to said agreement; and the determination of any such claim, demand, payment, or set-off, in this proceeding, shall be as effectual a bar to any future proceedings therein as if made in an action or suit brought specially upon them."—HELD :

1. That, if any error existed, in the pleadings it was cured by the subsequent action of the parties, when they entered into the trial agreement.

2. That it was the province of the defendant to stand upon the demurrer, or waive it; and having elected to waive it an appellate court should not reverse the judgment.

3. The special article sued on is to be construed according to the intention of the parties, to be collected from the instrument, and to that intention technical forms of expression must give way.

The defendant asked a witness, called by him, "what the plaintiff said to him about the said other work, and if he was not to pay the defendant full plasterer's prices therefor ?"—HELD :

1875.
June Term.

1. That, strictly interpreted, the question was leading, and therefore, properly refused.

2. The defendant had a right to prove what was the price agreeon for the outside work, or work done other than on the Quincy street house.

*Supersedeas* to a judgment of the municipal court of Wheeling granted on the petition of John Clator, the defendant below. The plaintiff was Joseph M. Brodie. The judgment was rendered on the 18th day of May, 1874.

The opinion of the Court contains a sufficient statement of the case.

The Hon. Gibson L. Cranmer, judge of said municipal court, presided at the trial below.

*Daniel Peck*, for the appellant.

*William P. Hubbard*, for the appellee.

MOORE, JUDGE:

The appellant, Clator, seeks a reversal of the judgment of the municipal court of the city of Wheeling, rendered May 18, 1874, in an action of covenant, instituted by Brodie, against him.

The action was based upon an article of agreement, made between Brodie and Clator, dated 13th September, 1869, which stipulated, "That John Clator, party of the second part, agrees to furnish the material and do all the work of plastering at J. M. Brodie's house, on Quincy street, *at full book of plasterer's prices*, in payment of which J. M. Brodie agrees to furnish all material and do all of John Clator's carpenter work *at full book of carpenter's prices*."

The declaration contained three counts. Clator demurred to the declaration and each count thereof, and for cause of demurrer, specially assigned, that:

"*First.* There is a variance between the agreement declared on and the agreement given on oyer, in this:

The contract of the defendant was not to pay cash for the work and materials of the plaintiff to be furnished to the defendant."

"*Second.* There is no sufficient averment of the performance on the part of the plaintiff; it does not appear what he did do under the contract."

"*Third.* All the counts are defective in this : They do not show any breach of the contract by the defendant, or in what manner he is in default, except, he avers, the non-payment of $4,000 in money, which is not called for in the contract."

"*Fourth.* The plaintiff has misconceived his contract, it being a contract to do and perform work and labor, and furnish materials by the defendant, for the work, labor and materials, by the plaintiff, for the defendant, and is not a money demand on either side," &c.

Defendant also plead covenants performed. The court overruled the demurrer.

Subsequently the parties entered of record in the cause an agreement, which had been reduced to writing, and signed by their attorneys, respectively, in the following language : "It is agreed that under the declaration, plea, and accounts filed by the parties, respectively, in this case, either party may give in evidence any claim, demand, payment, or set of, mentioned in his bill of particulars, whether arising under the special agreement declared on, or otherwise; but if not arising under the said special agreement, then such party is only to be allowed therefor such amounts as he may prove as the amount, price or value thereof, without reference to said agreement; and the determination of any such claim demand, payment, or set off, in this proceeding, shall be as effectual a bar to any future proceedings therein, as if made in an action or suit brought specially upon them."

During the trial of the case the defendant excepted to the ruling of the court.

1875.
June Term.

Brodie
v.
Clator.

It appears from the bill of exceptions that: "The defendant, in order to prove that the plaintiff was to pay him full plasterer's book of prices for his work and materials for *the other work done by him for the plaintiff than the house on Quincy street,* asked E. C. Jeffers, a witness called by him, (the defendant,) what the plaintiff had said to him about the said other work, and if he was not to pay the defendant full plasterer's prices therefor? to which inquiry the plaintiff objected; which objection was sustained, and the defendant was not permitted to prove that he was to have full book of plasterer's prices therefor."

The verdict was for plaintiff.

The defendant moved the court to set aside the verdict and grant a new trial; but the court overruled the motion, and gave judgment according to the verdict.

The appellant insists that the court erred:

*First*—In overruling the demurrer.

*Second*—In excluding the evidence sought to be given for the defendant by the witness E. C. Jeffers.

I am of opinion that if any error existed in overruling the demurrer, it was cured by the subsequent action of the parties, when they entered into the trial agreement. The trial agreement was equivalent to new pleadings, and gave to the defendant a latitude complete and full to "*give in evidence any claim, demand, payment or set-off mentioned in his bill of particulars, whether arising under the said special agreement declared on or otherwise.* It was a latitude for the introduction not only of claims and demands outside of the special agreement, but also a liberty of proof, or the introduction of evidence, beyond what could have been introduced in an action limited to the specific contract. By the court sanctioning a trial upon the terms of the trial agreement, it virtually sanctioned a waiver of the strict technicalities of plead-

1875.
June Term.

Brodie
v.
Clator.

ing in covenant as to both parties and with their consent, and, as that waiver could not operate injustice to the defendant, an Appellate Court should not reverse, even if an error had been committed in overruling the demurrer to the declaration. It was the province of the defendant to stand upon the demurrer, or waive it. He certainly abandoned the demurrer when he entered into the trial agreement, and secured more to himself, as defendant, than he could possibly have demanded had he been limited to the special contract. Having thus made his election, it is too late to seek the intercession of the Appellate Court upon that point.

The counsel in argument have called for a construction of the article sued on. It seems to me the appellee takes the correct view in holding that the "instrument is to be construed according to the intention of the parties to be collected from the instrument, and to that intention all technical forms of expression must give way. There is no reasonable construction of the contract, except, that each party wished done a certain work which the other could do ; that the value of their work would presumably be unequal ; that each party was to have the money value of his work, according to full book prices, respectively, with the right to the other to consider his own work, if he did any, as money and apply it in satisfaction of the others' demand *pro tanto* ; and if one of the parties did work of greater value than the other under the contract, the difference should be paid to him in money.

As to the other proposition of the appellant, that the court erred in refusing to allow the question put to witness Jeffers. Strictly interpreted the question, as framed, was leading, and therefore, properly refused ; but the court did err in not permitting the defendant to prove that he was to have full plasterer's prices for the work done other than that done on the Quincy street house, mentioned in his bill of particulars, because it

1875.
June Term.

Brodie
v.
Olator.

is clearly the intention of the trial agreement, and in fact it stipulates that either party may give in evidence any claim demand, payment or set-off, mentioned in his bill of particulars whether arising under the special agreement declared on, or otherwise, but if not arising under the said special agreement, then such party is only to be allowed therefor "such amounts as he may prove, as the amount, price or value thereof, without reference to said agreement."

It is obvious therefore, that the defendant had a right to prove what was the price agreed on for the outside work, or work done other than the Quincy street house ; and the court erred in refusing to permit the defendant to introduce the proof.

The judgment should be reversed, with costs, and a new trial granted.

Haymond, President, and Hoffman, Judge, concurred.

JUDGMENT REVERSED AND NEW TRIAL GRANTED.