# CHARLESTON.

SNEE v. WHITE.

Submitted December 5, 1916.   Decided December 9, 1916.

1. SHERIFFS AND CONSTABLES — *Appointment* — *Mode of Appointment*—*Order of Court.*

   Where a county court, at a special session, notice of which does not specifically cover the subject, appoints and qualifies a sheriff to fill a vacancy until the next general election, and afterwards in numerous instances recognizes his authority, and at a subsequent regular term ratifies and confirms its previous act, such act or acts of confirmation constitute such appointee sheriff de jure and not merely a de facto officer, and entitles him to exercise and perform all the functions and duties of his office.   (p. 410).

2. MANDAMUS—*Conditions Precedent*—*Accounts*—*Settlement.*

   Until there has been a final settlement by such appointee and an order made by the proper authority requiring him to turn over to his successor the books and papers pertaining to his office and relating to his unfinished business, and the public funds in his hands, the sheriff elected at the subsequent general election to fill out the remainder of the term cannot by mandamus compel such appointee to surrender to him such books and papers and the public funds deposited in the depositories designated pursuant to the statute.   (By three Judges.)   (p. 414).

Petition by William J. Snee against Edward E. White for writ of mandamus.

*Writ denied.*

*Lazzelle & Stewart, Goodwin & Reay, E. M. Everly* and *T. C. Townsend,* for petitioner.

*Cox & Baker* and *Glasscock & Glasscock,* for respondent.

MILLER, JUDGE:

Petitioner, on November 7, 1916, was elected by the people of Monongalia County, sheriff for the unexpired term of the late John B. Wallace, who was elected in November, 1912, for the term of four years, beginning January 1, 1913, and ending December 31, 1916, but who died in August, 1915, and the duties of whose office, until his successor should be

79 W. Va.

elected or appointed and qualified, as prescribed by section 10, of chapter 4, of the Code, were by section 13, chapter 7, Code 1913, devolved upon his deputies in office at the time of his death.

Petitioner took the oath of office and tendered to the county court the bonds required by law some time after his election, but these were not approved until November 27, 1916, on which day he made demand upon respondent for the possession of the sheriff's office, the furniture, fixtures, etc., belonging to the same, and "all the books, and fees, costs, percentages, penalties, allowances, commissions, perquisites and amounts not collected and accounted for by him, all moneys, deposits in any and all banks and other funds belonging to the sheriff of Monongalia County, including all tax books, land and personal property books, tax tickets, and all other books, papers, property, effects and appurtenances of, belonging to or in any wise pertaining to the office of Sheriff of Monongalia County." And the prayer of the petition and the alternative writ directed to respondent, as late acting and de facto sheriff of Monongalia County, would require of him full compliance with said demand.

Respondent was the deputy of said Wallace, who, after the latter's death, continued to discharge the duties of the office in the name of the decedent until August 5, 1915, when at a special session of the county court of said county he was appointed sheriff to fill the vacancy caused by the death of said Wallace, until the next general election and until his successor should be duly elected and qualified. After his appointment respondent as alleged in his return continued to act and perform all the duties of the office until November 27, 1916, the date of the qualification of petitioner as aforesaid, when, according to his return to the alternative writ, and the admitted fact, he vacated the sheriff's office in the court house, and surrendered the keys thereto to petitioner, with all the furniture and fixtures, etc., belonging to the office, and also the land and personal property books for the year 1916, but retained and took with him into another room in the court house, known as the grand jury room, the uncollected tax tickets, and books, and the delinquent tax records which had

been certified down to him by the auditor, and on which sales for delinquent taxes had been advertised by him, and were then pending, and all which tickets, books, and records, and all moneys collected by him for taxes and deposited in the depositories designated by him and approved by the county court of said county, pursuant to chapter 84, Acts 1915, had been retained by him lawfully as part of and as incident to the unfinished business in his hands as retiring sheriff; and he avers in his said return that he is advised that his term of office did not expire until the election and qualification of petitioner as his successor, and that it is not only his right but his duty to retain and conclude all such unfinished business, section 3, of Article IX, of the Constitution, providing, among other things, that "the retiring sheriff shall finish all business remaining in his hands, at the expiration of his term; for which purpose his commission and official bond shall remain in force", and that then petitioner is not authorized to receive nor is respondent permitted by law to turn over to him the tax tickets, books, delinquent returns, and moneys so deposited in said depositories in discharge of his duties and obligation under his said appointment and the condition of his official bonds.

The first point relied on by petitioner is that respondent's alleged appointment as sheriff, made at a special term of the county court, in August, 1915, was illegal and void because the notice of said special term did not specifically cover the business of appointing and qualifying public officers, and conferred no authority upon respondent, and that all his acts under said void appointment were those of a de facto and not a de jure officer, and that he could not defend under said appointment, or claim any right to exercise any of the rights or duties appurtenant to the office as retiring sheriff or otherwise.

Numerous decisions are cited and relied on to sustain this proposition. Conceding the proposition to be sound law we do not think the question is fairly presented so as to call for a decision thereon. It is well settled with respect not only to private corporations but to public corporations also, that if the act be one which the corporation might lawfully have

done or authorized in the first instance, its unauthorized performance, in its behalf, may be ratified in the same manner and with like effect as by an individual. Mechem's Public Offices and Officers, section 534; Throop on Public Officers, section 107; *State* v. *Torinus,* 26 Minn. 1, 37 Am. Rep. 395, and note.

The county court after the appointment of respondent on August 5, 1915, in special and regular sessions, frequently recognized him as sheriff and his acts as valid. At one time after the Act of 1915, providing for the designation of depositories of the public funds, it allowed him to reduce the penalties in his bonds, and approved the bonds when so modified and reduced in penalties; and lastly, on September 6, 1916, at a regular session of the court by an order directing notice of the election to fill the vacancy caused by the death of said Wallace, late sheriff, the due appointment and qualification of respondent, as sheriff to serve until the next general election, and that he had been duly appointed and qualified, and had served in that capacity and with full power and authority in that behalf, was declared and thereby spread upon the court record. So we hold that regardless of the question of the validity of the original appointment of respondent, his appointment has been ratified and confirmed by the court, and that at the time of the election and qualification of petitioner he was not a de facto officer, but de jure sheriff of said county, and entitled to exercise and perform all the duties of the office.

The next point relied on is that regardless of the question of validity or invalidity of his appointment, respondent is not a retiring sheriff, within the meaning of the constitution and statutes, and that in addition to the office fixtures and furniture and other property surrendered to petitioner he is bound also to turn over to him all the tax tickets and tax books for uncollected taxes, and also the delinquent tax records certified to him by the auditor, and also all moneys on deposit in the depositories designated by him and the county court, without other authority than the fact of his election and qualification as sheriff for said unexpired term.

Judge POFFENBARGER and I would now negative the first

branch of this proposition and hold that respondent is a retiring sheriff within the meaning of the constitution and statutes and that it is not only his right, but his duty, under his oath and bond to retain the tax tickets and tax books and the delinquent tax records and also the public moneys in hand in the depositories designated and to himself settle up all unfinished business in his hands at the time his term of office expired by the election and qualification of petitioner.

But the majority of the court are of opinion that it is unnecessary to decide this question, because, as we all agree, until respondent shall have settled his accounts as retiring sheriff, and the same have been approved and confirmed and orders made and served upon him to turn over to his successor the books and papers and the money on deposit or in his hands he cannot by mandamus or otherwise be compelled to do so, and that petitioner has not shown himself entitled to the relief sought by the writ.

It seems significant that the people should have provided in the constitution that retiring sheriffs should settle up all unfinished business in their hands at the end of their term of office. Manifestly there was good reason for this. The confusion and embarrassment that was likely to follow any other method of concluding the business was a sufficient reason; but we need not speculate on other reasons for the constitution so provides. At the time of the adoption of the constitution and for many years previous in Virginia and in this state the main business of the sheriff, by statute, was to collect, and disburse the taxes, and to distrain therefor, and to sell lands for the delinquent taxes thereon, and the provision of the constitution relied on must have had particular reference thereto. And as the same reason for this constitutional provision would apply in the case of one appointed to fill a vacancy, as to one filling out the full term for which he was elected, I think it should be construed to apply to both. In addition to the provision of the constitution, section 14, chapter 30, Code 1913, provides: "But a sheriff or collector of a former term may, notwithstanding the expiration of his term of office, by himself or deputies, have the same powers of distress and sale as he possessed before said term expired,

which right of distress and sale shall continue for the term of one year.''

But on the proposition on which we all agree, respondent was in office at the time when the land and property books with the taxes extended thereon for the year 1916, were required by law to be placed in his hands, and when he was required to begin the work preliminary to the collection of the taxes of that year; and the statute, section 33, chapter 39, Code 1913, requires that he be charged with the amount of the taxes levied for state, county, district, and district school purposes; and he was and remains so charged to the present time; petitioner is not charged therewith, and the moneys collected for taxes as the return shows was and continues to be deposited in accordance with chapter 84, Acts 1915, in the depositories designated, with no power on the part of the sheriff, except in certain particulars mentioned in the statute, of withdrawing or disbursing the same except upon orders of the county court, and the boards of education, of the several districts in said county, duly endorsed by him. How then can the court by mandamus compel respondent to turn over to petitioner these public funds without an order by the proper authority? The alternative writ avers no settlement nor any order upon respondent by any public authority to turn over the tax tickets, books, and funds, and without which we do not see how respondent can be required by mandamus or otherwise to surrender these books, documents and funds to petitioner. We have distinctly decided that without a proper order a sheriff is not bound or authorized to turn over, to his successor, at the termination of his office, the balance due from him as such public officer. *State* v. *Keadle,* 63 W. Va. 648; *Board, &c.* v. *Parsons,* 22 W. Va. 308; *State* v. *Hays,* 30 W. Va. 117.

It is proper to observe in this connection that by section 16, chapter 83, Acts 1915, providing for salaries for county officers, retiring sheriffs are required between the fifteenth and thirty-first days of December of the last year of their regular terms of office to make a complete settlement as required by said act, and on January first following to turn over to their successors all public moneys. But this statute

can have no application to the present case, for by the provisions of section twenty one thereof, in so far as said act relates to the office of sheriff, it is not to take effect until July first, nineteen hundred and seventeen.

We are, therefore, of the opinion that the writ was properly denied.

*Writ denied.*